IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| BROCK STONE, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>    *Defendants*. | Case 1:17-cv-02459-MJG<br><br>Hon. Marvin J. Garbis |

**DEFENDANTS' MOTION FOR CLARIFICATION AND, IF NECESSARY,
A PARTIAL STAY OF PRELIMINARY INJUNCTION PENDING APPEAL**

On November 21, 2017, the Court entered an Order granting in part and denying in part Defendants' motion to dismiss and granting Plaintiffs' motion for a preliminary injunction. ECF No. 85. The Court preliminarily enjoined Defendants from enforcing or implementing certain "policies and directives" in the President's August 25, 2017 Memorandum regarding military service by transgender individuals (the "Presidential Memorandum"). ECF No. 84. One aspect of the Court's injunction barred the Secretary of Defense from carrying out the President's direction to delay the effective date of changes to the accession policy for military service by transgender individuals that are scheduled to take effect on January 1, 2018. *See id*. at 2. That policy is set forth in Defense Department Directive-Type Memorandum ("DTM") 16-005, issued on June 30, 2016, ECF No. 85 at 6-8. On June 30, 2017, prior to the issuance of the Presidential Memorandum, Secretary of Defense Mattis exercised his independent authority to delay the effective date of DTM 16-005 to January 1, 2018. *Id.* at 9.

1

For the following reasons, Defendants seek clarification that the Preliminary Injunction does not prohibit the Secretary of Defense from again exercising his independent discretion to defer the January 1, 2018 effective date for the accessions provisions of DTM 16-005 for a limited period of time to further study whether the policy will impact military readiness and lethality or to complete further steps needed to implement the policy.

Alternatively, in the event the Court clarifies that the meaning of its Order is that the Secretary of Defense is preliminarily enjoined from exercising his own authority to defer the January 1, 2018 effective date, Defendants move to stay the accessions portion of the Preliminary Injunction pending a decision from the Fourth Circuit on their appeal of the Court's Preliminary Injunction.

## I. Motion to Clarify Scope of Preliminary Injunction

Prior to and wholly apart from the directives in the Presidential Memorandum, the Secretary of Defense exercised his independent authority to defer the effective date of the accessions provisions of DTM 16-005, for the purpose of further studying whether the DTM will impact military readiness and lethality. Specifically, as the Court noted in its order, *see* ECF No. 85 at 9, Secretary Mattis exercised his authority on June 30, 2017, to defer the effective date for the accessions provisions of DTM 16-005 from July 1, 2017, to January 1, 2018. *See* Department of Defense, Release No. NR-250-17 (June 30, 2017).[1] Plaintiffs did not challenge the Secretary's exercise of that authority, nor have they suggested that the Secretary's action was unlawful in any respect. Instead, Plaintiffs have only sought prospective relief to enjoin the

---

[1] The Department of Defense Release is available online at: https://www.defense.gov/News/News-Releases/News-Release-View/Article/1236145/statement-by-chief-pentagon-spokesperson-dana-w-white-on-transgender-accessions/ (last visited December 12, 2017).

Secretary from implementing the Presidential Memorandum, which the President issued subsequent to the Secretary's exercise of his independent authority.

Accordingly, Defendants believe that the Court's November 21, 2017 Order does not prohibit the Secretary of Defense from again exercising his discretion to defer the January 1, 2018 effective date for the accessions provisions of DTM 16-005 for a limited period of time, in order to further study whether the policy will impact military readiness and lethality, or to complete further steps needed to implement the policy. Nor could the Court have enjoined the Secretary of Defense from exercising such discretion because, as noted, the Plaintiffs have not challenged the Secretary's exercise of his independent authority to study whether the DTM 16-005 will impact military readiness and lethality. Notwithstanding these facts, and out of an abundance of caution, Defendants seek clarification of the Court's preliminary injunction order on this point.[2]

Accordingly, Defendants respectfully request that this Court clarify that its preliminary injunction does not prohibit the Secretary of Defense from exercising his discretion to defer the January 1, 2018 effective date for the accessions provisions of DTM 16-005 for a limited period of time to further study whether the policy will impact military readiness and lethality or to complete further steps needed to implement the policy.

---

[2] Defendants sought a similar clarification of the preliminary injunction entered in the related case of *Doe v. Trump*, No. 17-cv-1596 (CKK) (D.D.C.). *Id.*, 2017 WL 4873042 (D.D.C. Oct. 20, 2017). The *Doe* Court rejected the government's proposed clarification of its injunction, stating that the referenced "*status quo*" in its injunction should be read to mean "the retention and accession policies established in the June 30, 2016 Directive-type Memorandum as modified by Secretary of Defense James Mattis on June 30, 2017.," *Id.*, Doc. No. 70 at 2, and that defendants were enjoined from altering that status quo. Defendants respectfully disagree with the *Doe* Court's clarification order because it is inconsistent with the status quo that existed prior to the Presidential Memorandum, under which the Secretary had independent discretion and authority to extend the effective date of the new policy in DTM 16-005. In any event, that clarification order is irrelevant to determining the meaning of this Court's preliminary injunction.

## II. Motion to Stay Preliminary Injunction Pending Appeal

If the Court clarifies that, under the terms of its preliminary injunction, the Secretary of Defense is enjoined from exercising his discretion to defer the January 1, 2018 effective date of the new accessions policy, Defendants move to stay the accessions portion of the preliminary injunction pending appeal. The Court should grant Defendants' motion for several reasons.

### STANDARD OF REVIEW

In deciding a motion to stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).[3]

### ARGUMENT

In this case, the four factors weigh heavily in favor of a stay of the accession portion of the Court's preliminary injunction until the Fourth Circuit decides Defendants' appeal.

### A. Defendants Will Be Irreparably Harmed If They Are Forced to Implement a New Accessions Policy by January 1, 2018.

Defendants have submitted a declaration from Lernes J. Hebert ("Hebert Decl."), Acting Deputy Assistant Secretary of Defense for Military Personnel Policy, explaining that, in order to

---

[3] Although a party seeking a stay pending appeal must make a strong showing of likely success on the merits of the appeal, "this standard does not require the trial court to change its mind or conclude that its determination on the merits was erroneous." *St. Agnes Hosp. of City of Baltimore, Inc. v. Riddick*, 751 F. Supp. 75, 76 (D. Md. 1990). "Rather, a stay may be appropriate in a case where the threat of irreparable injury to the applicant is immediate and substantial, the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear and the interests of the other parties and the public are not harmed substantially." *Id.* (citation omitted).

adequately prepare to access transgender individuals, the military will need to promulgate new, complex, and interdisciplinary medical standards that will necessarily require evaluation across several medical specialties, including behavior and mental health, surgical procedures, and endocrinology.  Hebert Decl. ¶6.  The military must then train "tens of thousands" of geographically dispersed personnel on the application of those complex medical standards.  *Id.* ¶5.  These personnel include 20,367 recruiters, 2,785 employees across 65 Military Entrance Processing Stations, 32 Service Medical Waiver Authorities, and personnel at nine (9) initial military entrance locations ("boot camps") and the associated medical hospitals that support them.  *Id.*

Moreover, given the complexity of the interdisciplinary medical standards that need to be issued and the number of geographically dispersed individuals that need to be carefully trained on those standards, the Department would not be adequately and properly prepared to begin processing transgender applicants on January 1, 2018.  *Id.* ¶¶6, 9.  Thus, if the military is "compelled to execute transgender accessions by January 1," then "applicants may not receive the appropriate medical and administrative accession screening necessary for someone with a complex medical condition" and thereby enter the military even though they are "not physically or psychologically equipped to engage in combat/operational service."  *Id.* ¶8.  Put simply, compliance with the district court's January 1 deadline "will impose extraordinary burdens" on the military and have a "harmful impact" on "its missions[] and readiness."  *Id.* ¶¶3, 5.  Because Defendants are likely to suffer serious and irreparable harms if they are forced to begin accessing transgender individuals beginning on January 1, 2018, the Court should stay the accessions portion of its preliminary injunction until the Fourth Circuit decides Defendants' appeal.

The Department is also in the process of a high-level review of military service by transgender individuals that is scheduled to conclude in the next few weeks and could result in an accessions policy that differs from the one that the Court has ordered the military to implement by January 1, 2018. *Id.* ¶4, 10. In these circumstances, implementing a new accessions policy that would permit the accession of transgender individuals while the Department is in the process of concluding a comprehensive study that may ultimately lead to the implementation of a different policy would present not only the prospect of significant duplicative costs and administrative burdens but the high potential for sowing confusion in the ranks as well. *Id.* ¶10. Moreover, the military will be significantly harmed if it is required by the Court to access individuals that it would have rejected had it been permitted to complete its study and implement its final policy.

## II.     Plaintiffs Will Not Be Harmed by a Stay of the Accession Provision of the Court's Preliminary Injunction.

Plaintiffs will not be harmed by a stay of the accessions portion of the Court's preliminary injunction pending the outcome of Defendants' appeal. Only two of the Plaintiffs allege that they will be affected by the accessions provision of the August 25, 2017 Presidential Memorandum. But Plaintiff Gilbert must complete her undergraduate degree before she is eligible to accept a commission and is not schedule to graduate until the Spring 2019. ECF No. 66-11 ¶¶ 6-8. Similarly, Plaintiff George is scheduled to complete his associate's degree in nursing in December 2017, and then plans to begin a program to earn his bachelor's degree in nursing, which he expects to be able to complete "in 12-18 months," ECF No. 66-9 ¶ 5. Even assuming (as the district court did) that George will forego those educational plans if permitted to commission, ECF No. 85 at 32-33, plaintiff George has never even sought a waiver to accede under the longstanding policy, and it is unclear that the preliminary injunction would even allow

him to accede under the medical requirements of DTM 16-005. In any event, this sort of employment-related harm is not irreparable, particularly in light of the "higher requirement of irreparable injury [that] appli[es] in the military context." *Guerra v. Scruggs*, 942 F.2d 270, 271, 274 (4th Cir. 1991) (holding that general discharge of military employee "does not rise to the . . . level of irreparable injury justifying an injunction," even where employee alleged that discharge procedures violated the Due Process Clause and the Equal Protection Clause).

### III. A Stay of the Accession Provision of the Court's Preliminary Injunction Is in the Public Interest.

In these circumstances, it is not in the public interest for the Court to compel the military to begin accessing transgender individuals before it has had an opportunity to issue the necessary medical standards and train its personnel on those standards to ensure that military applicants are properly screened. *See Gilligan v. Morgan*, 413 U.S. 1 at 10 ("The complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches.").

### III. Defendants Are Likely to Prevail on the Merits of Their Appeal.

Defendants can also show a likelihood of success on the merits of their appeal of the preliminary injunction. First, the Court will have erred if it enjoins the Secretary of Defense from exercising his independent authority to extend the effective date of the new accessions policy when the Secretary's authority has not been challenged in this case and was not properly before the Court.

Second, the Court erred by entering a worldwide injunction, particularly in light of the fact that only two Plaintiffs are challenging the accession provision of the Presidential Memorandum and their alleged injuries could be remedied by an injunction that applies only to them. *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (explaining that equitable relief should "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.").

Third, the Court erred by concluding that at least one Plaintiff has established standing and a likelihood of irreparable harm from the accessions provision of the Presidential Memorandum. As discussed above, the impact of the policy on Plaintiff George is speculative; George has never sought a waiver, the details of the final policy have yet to be developed, and it is not clear that George would be eligible to accede even under DTM 16-005. Any harm to Plaintiff Gilbert is even more speculative, as Gilbert will not be eligible to commission until at least Spring 2019. *See* ECF No. 66-11 ¶¶ 6-8. In any event, as discussed above, any harm is not irreparable. *Guerra*, 942 F.2d at 274. These Plaintiffs' allegations of speculative, future harm do not outweigh the hardship that the injunction will impose on the military.

Fourth, the Court erred on the merits, in particular by reaching substantial constitutional questions and not applying the appropriate level of deference when the military is presently examining the policy at issue.

Fifth, for the reasons given above, the Court abused its discretion in weighing the equities to decide that a preliminary injunction was warranted.

Accordingly, Defendants are likely to succeed on these issues in their appeal and have, at the very least, presented serious and difficult questions of law that are sufficient in light of the other factors to warrant a stay. *Riddick*, 751 F. Supp. 75, 76 (D. Md. 1990)

### III. Request for Expedited Ruling

Because the January 1, 2018 deadline for complying with the accessions portion of the Court's preliminary injunction is quickly approaching, Defendants waive their right to file a reply to any opposition that Plaintiffs may file to this motion and respectfully request a decision on their motion by 12:00 PM on Thursday, December 14, so they may have sufficient time to seek an emergency stay from the Court of Appeals prior to January 1, 2018, if the Court denies the motion. Defense counsel has conferred with Plaintiffs' counsel, and Plaintiffs oppose this motion.

Date:   December 12, 2017

    Respectfully submitted,

    CHAD A. READLER
    Principal Deputy Attorney General
    Civil Division

    BRETT A. SHUMATE
    Deputy Assistant Attorney General

    JOHN R. GRIFFITHS
    Branch Director

    ANTHONY J. COPPOLINO
    Deputy Director

    */s/ Ryan B. Parker*
    RYAN B. PARKER
    ANDREW E. CARMICHAEL
    United States Department of Justice
    Civil Division, Federal Programs Branch
    Telephone: (202) 514-4336
    Email: ryan.parker@usdoj.gov

    *Counsel for Defendants*