## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| BROCK STONE, *et al.*, | |
| *Plaintiffs*, | Case 1:17-cv-02459-GLR |
| v. | Hon. George L. Russell, III |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS' REPLY IN SUPPORT OF OBJECTIONS TO THE MAGISTRATE JUDGE'S MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiffs provide no compelling rebuttal to Defendants' arguments that the Magistrate Judge overlooked binding Supreme Court precedent and Fourth Circuit case law in the Memorandum Opinion and Order.  Plaintiffs argue that the Magistrate Judge had discretion to rule on discovery disputes when dispositive motions that raise threshold jurisdictional arguments are pending before the Court, but they ignore the principle that a court may not proceed without jurisdiction.  Plaintiffs also argue that they are entitled to the disclosure of thousands of deliberative documents because they have alleged that the Government's intent is at issue in this case, but, in doing so, they brush aside both binding Supreme Court precedent directing the Court to constrain its review to the policy itself and the Department of Defense's ("DoD") stated justifications of the policy and Fourth Circuit case law directing the Court to consider the Government's interests in non-disclosure of the deliberative documents.  Finally, Plaintiffs argue that there is no live controversy over presidential communications and deliberations because they do not presently seek the disclosure of these materials, but they ignore that the Magistrate Judge permitted Plaintiffs to seek to compel discovery of these materials.  Absent a protective order, if Plaintiffs seek to compel presidential materials, the President may be forced to

formally invoke the privilege in response, despite the fact that the Supreme Court directed courts to "explore other avenues, short of forcing the Executive to invoke Privilege." *See Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 390 (2004).

In sum, the Magistrate Judge acted contrary to law by failing to apply Supreme Court precedent and Fourth Circuit case law and made clearly erroneous factual findings, and Plaintiffs' response fails to present any argument or authority that undercuts these conclusions. Therefore, the Memorandum Opinion and Order should be set aside, save for the prohibition on seeking discovery from the President pending the resolution of the motion to dismiss the President as a party to this case.

## ARGUMENT

### I.     The Magistrate Judge Erred by Deciding Discovery Motions Before this Court Resolved Threshold Jurisdictional Issues.

In their response brief, Plaintiffs argue that the Magistrate Judge had authority to timely resolve pending discovery disputes even though the parties had filed dispositive motions. *See* Pls.' Resp. 8–10, Dkt. 216. But Plaintiffs ignore the fundamental point that Defendants have raised threshold jurisdictional arguments of standing and mootness in their dispositive motions, arguments that may foreclose any discovery. *See* Defs.' Mot. to Dismiss Pls.' Second Am. Compl. 9–23, Dkt. 158 (arguing standing and mootness); Defs.' Mot. to Dissolve the Prelim. Inj. 9–11, Dkt. 120 (arguing mootness). When, as here, threshold jurisdictional arguments are pending before the Court, it is inappropriate to rule on discovery disputes because "'[w]ithout jurisdiction the court cannot proceed at all in any cause.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)); *see also Stop Reckless Econ. Instability Caused By Democrats v. Fed. Election Comm'n*, 814 F.3d 221, 228 (4th Cir. 2016) ("'[F]ederal courts must determine whether they have subject-matter jurisdiction over a claim before proceeding to address its merits." (citing *Steel Co.*, 523 U.S. at 94)), *cert. denied*, 137 S. Ct. 374 (2016).

The Supreme Court recently addressed a similar issue in *In re United States*, 138 S. Ct. 443 (2017)

(per curiam).   In that case, the plaintiffs raised challenges under the Constitution and the Administrative Procedure Act to the decision by the Acting Secretary of the Department of Homeland Security to rescind a program known as the Deferred Action for Childhood Arrivals ("DACA"). *Id.* at 444.  The Government filed an administrative record to support the decision to rescind DACA in district court, which contained all of the non-deliberative material considered by the Acting Secretary in reaching her determination. *Id.*  The plaintiffs then filed a motion with the district court, arguing that the administrative record was incomplete and requesting that the Court compel completion of the record to include deliberative materials.   *Id.*   The court granted plaintiffs' motion and the Government filed a petition for a writ of mandamus, which the Ninth Circuit denied. *Id.*  After denial of the petition, the Government moved in district court for a stay of its order requiring completion of the record until after the resolution of the Government's pending motion to dismiss. *Id.*  The district court denied the motion. *Id.*  The Government then sought relief from the Supreme Court. *Id.*  Upon review of the breadth of the district court's order, the Supreme Court found that "[t]he Government makes serious arguments that at least portions of the District Court's order are overly broad." *Id.* at 445.  The Supreme Court concluded that because the Government had raised threshold jurisdictional arguments in its motion to dismiss, the district court should have deferred ordering the production of documents to complete the administrative record until after it had ruled on those threshold arguments.   *Id.*   Similarly, here, the Government has raised jurisdictional arguments that could be fully dispositive of the case, and the Magistrate Judge should have waited for the Court to rule on those jurisdictional arguments before compelling the production of thousands of deliberative documents.

Moreover, even if threshold jurisdictional arguments were not pending before the Court, courts frequently grant stays of discovery pending the resolution of dispositive motions because "a court's ruling on a motion to dismiss may assist in defining the contours of discovery." *Int'l Refugee*

*Assistance Project v. Trump*, No. CV TDC-17-0361, 2018 WL 1932681, at *6 (D. Md. Apr. 24, 2018). That is the case here. As set forth in Defendants' Objections, numerous dispositive motions are pending before the Court that directly affect the extent and scope of discovery in this case. In particular, the parties have filed cross-motions for summary judgment, which, if resolved in favor of either party, could be dispositive of all of Plaintiffs' claims or could significantly narrow the issues in dispute. *See* Defs.' Mot., Dkt. 158; Pls.' Mot., Dkt. 163. For example, if the Court concludes that its analysis should be focused on DoD's new policy rather than the President's statements on Twitter or the revoked 2017 Presidential Memorandum, then Plaintiffs would be unable to show any need for deliberative documents related to the revoked policy. Because resolution of the dispositive motions could affect the extent and scope of discovery, the Magistrate Judge again should have held discovery motions in abeyance until these dispositive motions were resolved. *See Int'l Refugee Assistance Project*, 2018 WL 1932681, at *6 (recognizing that allowing discovery to proceed while threshold issues were pending before a higher court would "bog [the case] down in motions practice, with the parties essentially relitigating unsettled legal questions through discovery").

Plaintiffs also argue that because the court in the related case *Doe v. Trump* recently denied the parties' cross-motions for summary judgment, "it is not practical or possible to delay resolution of these discovery disputes while the motions for summary judgment are pending." Pls.' Resp. 9–10. But the *Doe* Court appropriately delayed consideration of discovery disputes while dispositive motions were pending (including motions that raised threshold jurisdictional arguments), *see* Order, *Doe v. Trump*, No. 17-1597 (D.D.C. June 19, 2018), Dkt. 145, and in any event, that court erred in concluding that further discovery is necessary to reach the merits of the case, *see* Mem. Op., *Doe v. Trump*, No. 17-cv-1597 (D.D.C. Aug. 24, 2018), Dkt. 160. That conclusion is contrary to the Supreme Court's instruction in *Trump v. Hawaii* that courts should review the policy itself to determine whether it "can reasonably be understood to result from a justification independent of unconstitutional grounds." 138

S. Ct. 2392, 2420, 2420 n.5 (2018).  *See infra* Part II.A.  At least until the district court here rules on these issues, the discovery ordered by the Magistrate Judge is improper.

## II.   The Magistrate Judge's Conclusion that the Deliberative Process Privilege is Inapplicable in this Case is Contrary to Law.

### A.   The Magistrate Judge Overlooked, and Plaintiffs Misapply, Binding Supreme Court Precedent.

Plaintiffs argue that the Magistrate Judge "did not act 'contrary to law' in holding that the deliberative process privilege is inapplicable when, as here, a plaintiff's cause of action turns on the government's intent," Pls.' Resp. 13, but the Supreme Court's recent decision in *Hawaii* puts that argument to rest.  *Hawaii* shows that when the Governmental action concerns a national security or military matter, subjective intent is irrelevant so long as the Government's action "can reasonably be understood to result from a justification independent of unconstitutional grounds" based on the face of the challenged policy.  138 S. Ct. at 2420, 2420 n.5.

Plaintiffs attempt to brush aside *Hawaii* by arguing that the policy at issue in that case was facially neutral, unlike DoD's new policy.  Pls.' Resp. 11–12.  This argument is incorrect as a matter of fact and meritless as a matter of law.  The Department of Defense's new policy—like the policy announced by then-Secretary Ashton Carter before it—turns not on transgender status, but on a medical diagnosis (gender dysphoria) and an associated medical treatment (gender transition).  DoD Report and Recommendation 4–6, Dkt. 120-2.  Plaintiffs fail to acknowledge that considering a prospective servicemember's history of a medical condition and its treatment is a standard military practice.  Indeed, prospective servicemembers are presumptively disqualified based solely on a history of many different medical conditions.  *See* AR 210–261 (DoDI 6130.03), Dkt. 133-3 (setting "medical standards for appointment, enlistment, or induction into the military services").  Thus, it is unsurprising that the military would take into account past transition treatments, and doing so does not turn DoD's new policy into a categorical sex-based or transgender ban.  In addition, Plaintiffs

ignore the fact that under DoD's new policy, many individuals who require or have undergone gender transition may serve pursuant to its reliance exemption. DoD Report and Recommendation 5–6, Dkt. 120-2. In any event, these are issues addressed in the pending summary judgment motions and should not be grounds for ordering the production of thousands of deliberative documents.

Moreover, even if DoD's new policy did turn on transgender status, the deferential standard the Supreme Court applied in *Hawaii* would still be appropriate and foreclose the discovery sought. In *Hawaii*, the Supreme Court rejected the invitation to import "the *de novo* 'reasonable observer' inquiry" into "the national security and foreign affairs context," including cases that involve review of "military actions." 138 S. Ct. at 2420 n.5. Instead, based on deference principles, the Court applied "rational basis review" and stressed that judicial "inquiry into matters of . . . national security is highly constrained."[1] *Id.* at 2420 (citing *Mathews v. Diaz*, 426 U.S. 67, 81–82 (1976)). That standard applies not just to policies in the areas of national security or foreign affairs that are facially neutral, but also to policies in those areas that contain "categorical" classifications, such as classifications "on the basis of sex." *Id.* at 2419 (citing *Fiallo v. Bell*, 430 U.S. 787, 795, 799 (1977)); *see also Rostker v. Goldberg*, 453 U.S. 57, 64 (1981) (according deference to a statute that drew distinctions based on sex). Therefore, *Hawaii* underscores that deferential review applies to "military actions," 138 S. Ct. at 2420 n.5— regardless of whether a similar action would trigger heightened scrutiny in the civilian context[2]—and

---

[1] Citing the Court's preliminary injunction opinion, Plaintiffs argue that *Hawaii* is inapposite because "this Court has already concluded that President Trump's Ban is subject to heightened scrutiny—not rational basis review." Pls.' Resp. 13 n.5 (citing Order, Dkt. 85). But that opinion related only to the 2017 Presidential Memorandum and was issued prior to the Supreme Court's decision in *Hawaii* and the promulgation of DoD's new policy. DoD's new policy differs from the directives in the 2017 Presidential Memorandum and was the product of a significantly different process than the one the Court believed preceded the 2017 Presidential Memorandum. *See* Defs.' Objections 25–26; *compare* Mattis Mem., Dkt. 120-1 *and* DoD Report and Recommendations, Dkt. 120-2, *with* 2017 Presidential Memorandum, Dkt. 1-4.

[2] Thus, Plaintiffs' reliance on *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 577 (6th Cir. 2018), and *Glenn v. Brumby*, 663 F.3d 1312, 1321 (11th Cir. 2011), is inapposite because neither

that such deference is due to the military personnel decisions at issue here.

Plaintiffs also note that the Court in *Hawaii* stated that it "may consider plaintiffs' extrinsic evidence" of previous executive orders and past statements by the President about Muslims, Pls.' Resp. 13 (quoting *Hawaii*, 138 S. Ct. at 2420), but they disregard that the Court upheld the proclamation based on its text and the "worldwide review process undertaken by multiple Cabinet officials and their agencies" that supported it, *Hawaii*, 138 S. Ct. at 2421. The Court thereby rejected the theory that prior statements forever "contaminated" the proclamation with "impermissible discriminatory animus." *Id.* at 2440 (Sotomayor, J., dissenting). *Hawaii* underscores the need to assess DoD's 2018 policy on its own terms.

In addition, the Court in *Hawaii* stressed that the review of the policies concerning "national security matters" should be both "deferential" and "highly constrained," 138 S. Ct. at 2419–20 (majority op.), and did not find that a party is entitled to discovery underlying the policy-making process. Indeed, such a "searching inquiry" for the justifications of the policy would be inappropriate because "'when it comes to collecting evidence and drawing inferences' on questions of national security, 'the lack of competence of the courts is marked.'" *Id.* at 2419 (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010)). As Justice Kennedy recognized, the Court must ensure that "any discovery and other preliminary matters would not themselves intrude on the foreign affairs power of the Executive." *Id.* at 2424 (Kennedy, J., concurring). The Magistrate Judge's broad order directing the disclosure of thousands of deliberative documents by the military is the opposite of a "highly constrained" review. Again, as explained in *Hawaii*, the Court should focus on the stated justifications for the policy as set forth in the Memorandum issued by the Secretary of Defense on February 22, 2018, and its accompanying report, not any preceding presidential statements or Department

---

case involved a military policy, and neither court applied the deferential standard required to review challenges to military policies.

deliberations.

**B.  The Magistrate Judge's Finding that the Deliberative Process Privilege Does Not Apply as a Matter of Law is Incompatible with the Fourth Circuit's Balancing Test.**

Plaintiffs also argue that the Magistrate Judge's conclusion that the deliberative process privilege does not apply as a matter of law when intent is at issue is consistent with the "dominant view" among courts. Pls.' Resp. 13. That argument is meritless. To begin, Plaintiffs cite to no Fourth Circuit case that has expressed this view. *See id.* Indeed, such an approach is contrary to the balancing test prescribed by the Fourth Circuit in *Cipollone v. Liggett Grp. Inc.*, 812 F.2d 1400 (4th Cir. 1987) (table) (quoting *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)). The *Cipollone* analysis requires courts to balance a party's articulated need for specific deliberative documents or information against the Government's interests in non-disclosure to determine whether the deliberative process privilege can be overcome. *Id.*; *see also In re United States*, 678 F. App'x 981, 987 (Fed. Cir. 2017) (finding that a "document-by-document" analysis is required in assessing claims that the deliberative process privilege has been overcome). The Magistrate Judge's conclusion that when intent is at issue the deliberative process privilege does not apply as a matter of law entirely ignores the Fourth Circuit's directive to consider the Government's interests in non-disclosure before determining that the privilege has been overcome.

Moreover, none of the out-of-circuit case law Plaintiffs cite as demonstrating the so-called "dominant view" of courts involved a military policy concerning the composition of the fighting force, and thus none of those courts applied the deferential standard required to review challenges to military policies. *See Hawaii*, 138 S. Ct. at 2420 n.5; *see also Rostker*, 453 U.S. at 72–74. The basis for the cases relied upon by Plaintiffs is a bankruptcy case from the D.C. Circuit, *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998), which is plainly inapposite for the reasons set forth in Defendants' Objections. *See* Defs.' Objections 20–22, Dkt. 209.

Moreover, in two of the cases Plaintiffs cite for the proposition that the privilege does not apply when intent is at issue, the courts declined to apply the deliberative process privilege to "routine personnel decisions," such as the decision to terminate an employee, observing that the deliberative process privilege is intended to protect deliberations behind broad policy decisions—precisely the kind of decision at issue here. *See United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D. 523, 528 (N.D. Ind. 2005); *Jones v. City of Coll. Park*, 237 F.R.D. 517, 521 (N.D. Ga. 2006). Further, the court in *Jones* applied a balancing test before ordering disclosure despite finding that "government intent is at the heart of the issue in this case"—contrary to Plaintiffs' own position. 237 F.R.D. at 521. Similarly, although Plaintiffs argue that *Spell v. McDaniel*, 591 F. Supp. 1090 (E.D.N.C. 1984), supports their argument that the deliberative process privilege disappears when intent is at issue, Pls.' Resp. 14–15, the *Spell* Court actually conducted a balancing test before finding that the plaintiff's need for "internal investigative files and reports" to prove his deliberate indifference claim outweighed the Government's interest in confidentiality, *see* 591 F. Supp. at 1115–19. Therefore, none of the authority cited by Plaintiffs or the Magistrate Judge provides any basis for deviating from the Fourth Circuit's direction to apply a balancing test or the Supreme Court's instruction in *Hawaii* that a military personnel policy should be assessed on its own stated bases, not a plaintiff's assertion of the purported intent behind it. 138 S. Ct. at 2417–23.[3]

---

[3] *Hawaii* thus undercuts sharply Plaintiffs' contention that they need the deliberative documents so the Court may determine whether principles of military deference apply in this case. *See* Pls.' Resp. 2, 9–10. Even before *Hawaii*, that argument was meritless. As one of the "complex, subtle, and professional decisions as to the composition . . . of a military force, which are essentially professional military judgments," DoD's 2018 policy is subject to a highly deferential form of review. *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (quotation omitted). This deference stems from the Supreme Court's recognition that control of the armed forces is vested in the Executive and Legislative branches by the text of the Constitution. *See Rostker*, 453 U.S. at 67 (holding, in a case involving facial classifications on the basis of gender, that "the Constitution itself requires such deference"); *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986) ("Our review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society."). The notion that deference can only be applied once the court

Plaintiffs next argue that even if a balancing test did apply, "the result would be the same," Pls.' Resp. 15, but that too is mistaken.  Plaintiffs continue to offer no explanation for their argument that they need tens of thousands of deliberative documents related to multiple military policies. Instead, Plaintiffs merely cite out-of-circuit cases and reiterate in a conclusory manner that "when government intent is of central importance to the case, the plaintiff's need for privileged documents is dispositive in the balancing test."[4]  *Id.* at 15.  Plaintiffs' conclusory statement is far from the particularized and "compelling need" required to overcome the privilege for *each and every* document withheld relating to the President's 2017 actions, the Panel of Experts' study, or DoD's 2018 policy. *Cipollone*, 812 F.2d 1400 (affirming the district court's decision to override the privilege after finding that the corporation "demonstrated a compelling need for the materials"); *see also United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (stating that the plaintiff had to show a "particularized need" for specific documents to overcome the privilege); *Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1307 (Fed. Cir. 2006) (stating that a plaintiff must show a "compelling need" to overcome the privilege).  And again, none of the cases Plaintiffs cite involved a military policy or the deferential standard of review that is applicable to such a policy.  *See Hawaii*, 138 S. Ct. at 2420 n.5; *see also Rostker*, 453 U.S. at 72–74.

---

determines that that the military followed what it deems to be an adequate review process is wrong. For example, in *Rostker*, the Supreme Court applied a lower standard of review because "[t]he case ar[ose] in the context of Congress' authority over national defense and military affairs," where deference to its judgments was "unquestionably due."  453 U.S. at 64–65.  Likewise, the Supreme Court in *Goldman* applied deference based on the "military context" of the case, not because it reviewed the decision-making process and determined that the process met a court's specifications. 475 U.S. at 507.

[4] In addition, although Plaintiffs cite to *Scott v. Bd. of Educ. of City of E. Orange*, 219 F.R.D. 333, 337–38 (D.N.J. 2004), as supporting their position that the "intent factor is dispositive," Pls.' Resp. 13, the *Scott* Court actually held that the deliberative process privilege "cannot be invoked by the Board in this matter because the Privilege shields deliberations that contribute to the formulation of important public policy not routine operating decisions like the termination of a HVAC Supervisor," 219 F.R.D. at 338.

The cases instead establish that the balancing test must be done on a document-by-document, or at least a category-by-category, basis. *In re United States*, 678 F. App'x at 987 (requiring a "document-by-document" analysis); Order at 2, *State of New York v. Dep't of Commerce*, No. 1:18-cv-02921-JMF (S.D.N.Y. Aug. 14, 2018), Dkt. 241 (declining to reach the plaintiffs' arguments that the deliberative process "privilege is overcome in this case" because such an analysis "require[s] particularized consideration of the documents at issue" (citing *Pub. Emps. for Envtl. Responsibility v. Envtl. Prot. Agency*, 213 F. Supp. 3d 1, 11 (D.D.C. 2016))); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980) ("[T]he deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process."). Because Plaintiffs failed to articulate a need for any document, or even categories of documents, they cannot meet their burden to overcome the deliberative process privilege.

Plaintiffs also contend that the second *Cipollone* factor—the availability of evidence from other sources—weighs in their favor because the deliberative documents are "likely to contain the information most relevant to Plaintiffs' claims." Pls.' Resp. 16. But this is not the case. The information most relevant to Plaintiffs' challenge to DoD's new policy is contained in the policy itself and its supporting 3,000-page administrative record, which have been disclosed to Plaintiffs. *See* Mattis Mem., Dkt. 120-1; DoD Report and Recommendations, Dkt. 120-2; Administrative Record, Dkt. 133. The availability of this evidence, which is the evidence the Court should consider in determining whether DoD's new policy "can reasonably be understood to result from a justification independent of unconstitutional grounds," *Hawaii*, 138 S. Ct. 2392, 2420, weighs decidedly in Defendants' favor.

Significantly, the Magistrate Judge entirely ignores and Plaintiffs brush aside the fourth *Cipollone* factor—"'the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.'" 812 F.2d at 1400 (quoting *Warner*, 742 F.2d at 1161). Plaintiffs argue only that Defendants made "conclusory allegations" about the chilling effect the

disclosure of thousands of deliberative documents from the Department of Defense and the Services covering multiple policies plainly would have on future policy discussions. Pls.' Resp. 17. But it is hardly a "conclusory allegation" that senior leaders of the Department of Defense and the military rely upon open and candid conversations between leadership, advisors, and policy analysts to advise and inform DoD policymakers across the military services on various courses of action for any decision, and that wholesale disclosure of deliberative materials would have a chilling effect on future deliberations regarding DoD personnel and other policies. *See* Declaration of Stephanie P. Miller ¶ 12, Dkt. 186-1 (June 29, 2018) (explaining the chilling effect of the disclosure of one document) (filed under seal); *see also Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 464 (D.C. Cir. 2014) (stating that "[p]remature release of material protected by the deliberative process privilege would have the effect of chilling current and future agency decisionmaking because agency officials … would no longer have the assurance that their communications would remain protected," and thus would "not feel as free to advance the frank and candid ideas and advice that help agencies make good decisions"). The Magistrate Judge's failure to consider the significant "'extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions'" in this case, as directed by *Cipollone*, was contrary to law. 812 F.2d at 1400 (quoting *Warner*, 742 F.2d at 1161).

Finally, Plaintiffs argue that Defendants "bear [the] responsibility for the breadth of the order" because "Defendants asserted deliberative process privilege over tens of thousands of documents." Pls.' Resp. 10–11. But the number of documents at issue is the result of the sweeping nature of Plaintiffs' discovery requests, which sought *all* deliberative documents and information related to the decision-making process. *See, e.g.*, Kies Decl. Exh. 2 (Pls.' First Set of Reqs. for Prod. 7, 8, 9, 16, Jan. 3, 2018), Dkt. 177-6 (requesting "All Documents and Communications" that any Defendant "considered, reviewed, referenced, or relied upon directly or indirectly as a basis or impetus for" the President's statements on Twitter, the August 2017 Presidential Memorandum, and DoD's Interim

Guidance, and "All Documents and Communications conceived, authored, drafted, created, selected, compiled, received, published, relied upon directly or indirectly, or distributed by the Panel of Experts, Including any recommendations of the Panel of Experts and the implementation plan due on February 21, 2018"); Enlow Decl. Exh. 2 (Pls.' Second Set of Reqs. for Prod. 22–26, May 21, 2018), Dkt. 177-30 (requesting "All Documents and Communications" relating to DoD's new policy, including "drafts" of the Mattis Memorandum, DoD's Report and Recommendations, and the March 2018 Presidential Memorandum).   Precisely because Plaintiffs requested all documents underlying the decision-making processes of multiple military policies, it is not surprising that many responsive documents are pre-decisional and deliberative, and thus protected under the deliberative process privilege.[5]  If anything, the sheer volume of documents demanded underscores the Magistrate Judge's error in not undertaking a balancing test.

Plaintiffs also cite to the parties' dispute over five inadvertently produced privileged documents, and argue that because Defendants withdrew their clawback of four of those documents, Defendants improperly withheld thousands of other deliberative documents. Pls.' Resp. 11 n.4.  This is an obvious non-sequitur.  Defendants maintained that the documents were "properly subject to the deliberative process privilege" and withdrew the clawback over certain documents "in an attempt to narrow the dispute before the Court."  Defs.' Resp. 1, Dkt. 186.  The resolution of disputes over five identified documents cannot justify the wholesale disclosure of thousands more.  If anything, the clawback dispute illustrates the wholesale nature of Plaintiffs' demands and their failure to put specific

---

[5] Moreover, although Plaintiffs assert that they "repeatedly attempted to narrow the issue through meet and confers," Pls.' Resp. 10–11, in fact the letters they sent made the same demand for all of the documents withheld under the deliberative process privilege based on out-of-circuit case law.  In response, Government counsel stated Defendants' disagreement with Plaintiffs' theory that the deliberative process privilege is inapplicable in this case and requested that Plaintiffs identify specific documents to which Plaintiffs contest Defendants' deliberative process privilege assertions. *See* Enlow Decl. ¶ 7, Dkt. 176-4.  Plaintiffs refused to do so, instead filing a motion to compel seeking a ruling that the deliberative process privilege does not apply as a matter of law in this case.

documents at issue.

### C. The Magistrate Judge's Dismissal of Plaintiffs' 502(d) Motion as Moot was Contrary to Law.

Plaintiffs next seek to defend the Magistrate Judge's finding that Plaintiffs' challenge to Defendants' clawback of one inadvertently produced, privileged document is moot on the ground that the document "falls within the scope of Plaintiffs' Motion to Compel." Pls.' Resp. 22. But Defendants do not contest that the document falls within one of the broad categories of documents that Plaintiffs moved to compel. Rather, Defendants argue that the Magistrate Judge's failure to conduct the *Cipollone* balancing test before ordering disclosure of the deliberative document was contrary to law. Moreover, as demonstrated in Defendants' sealed Response to Plaintiffs' 502(d) Motion, application of the balancing test to this document shows that the Government's interest in non-disclosure outweighs Plaintiffs' need for the document. *See* Defs.' Resp. 10–15, Dkt. 186; Miller Decl., Dkt. 186-1.

### III.   The Magistrate Judge's Conclusion that Plaintiffs May Seek to Compel Information Concerning Presidential Communications and Deliberations from Defendants Other than the President was Contrary to Law.

Plaintiffs argue that because they did not file a motion to compel the disclosure of presidential communications and deliberations, there is no live controversy concerning Defendants' Motion for a Protective Order. Pls.' Resp. 7–8. But that is not the case. The Magistrate Judge's partial denial of Defendants' Motion for a Protective Order means that Plaintiffs may now move to compel the disclosure of presidential communications and deliberations in the possession of Defendants other than the President. That, in turn, would immediately implicate the question of invoking Executive privilege in response. *See In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) (finding that the privilege does not have to be formally invoked "in advance of the motion to compel"). Forcing the Executive to invoke privilege in response to a motion to compel is directly contrary to the Supreme Court's admonition in *Cheney* that courts "explore other avenues, short of forcing the Executive to invoke privilege." 542 U.S. at 390. Because the Magistrate Judge's partial denial of Defendants' Motion for

14

a Protective Order sets the stage for precisely this prospect, which "should be avoided whenever possible," *id.* at 389–90, that aspect of the decision is also contrary to law.

## IV.    The Factual Findings Underlying the Memorandum Opinion and Order are Clearly Erroneous.

Plaintiffs also contend that there are no factual errors in the Magistrate Judge's decision, but such errors are readily apparent.  Plaintiffs argue that "the Magistrate Judge did not clearly err in finding that the Panel of Experts would not have existed but for President Trump's Twitter statements and the August 2017 Ban." Pls.' Resp. 20.  Yet they concede that, contrary to the Magistrate Judge's findings, the Department of Defense began its review of the accession policy in June 2017, *before* those Twitter statements.  *Id.*  Plaintiffs attempt to minimize this fact by recharacterizing the June 2017 review as an "assessment of the military's readiness to implement [the accession policy] by July 1, 2017, not whether to implement [it] at all." *Id.*  But DoD's assessment began months earlier.

In May 2017, the Deputy Secretary of Defense directed the Service Secretaries "to assess the Department's readiness to begin accessing transgender applicants into military service on July 1, 2017." Dkt. 190-2 (USDOE00003263).   In response, the Service Secretaries assessed their Service's readiness to begin accessions on July 1, 2017, and all recommended delays (of one to three years) to the accessions policy because the Services had "significant concerns about the potential availability, readiness, and deployability of potential transgender accessions." Dkt. 190-2 (USDOE00003258–62). Thus, a "readiness" review by the Service Secretaries took place in May 2017 in response to the Deputy Secretary of Defense's request.

But Secretary of Defense James Mattis then issued a memorandum on June 30, 2017, in which he ordered a delay in accessions.  Secretary Mattis determined that additional time was needed to "evaluate more carefully the impact of such accessions on readiness and lethality" and stated that DoD's "review will include all relevant considerations." AR 326, Dkt. 133-4.  Thus, contrary to the Magistrate Judge's findings, Secretary Mattis ordered a comprehensive review of the impact of

accessions by transgender individuals on readiness and lethality before the President's statements on Twitter in July 2017. For these reasons, Plaintiffs' assertion that "[n]othing in the record supports the idea that the Panel of Experts would have studied and recommended a broad ban in the absence of President Trump's directives," Pls.' Resp. 21, is wrong—as shown, DoD was already studying and delaying the policy put in place by the prior Administration.

Plaintiffs also attempt to bolster the Magistrate Judge's erroneous findings about presidential influence by asserting that, in the Service Secretaries' recommendations to the Deputy Secretary of Defense, "no branch recommended reinstating the historical ban on transgender service." Pls.' Resp. 20 n.8. But that argument rests on the mistaken premise that DoD's new policy is a categorical ban. It is not. *Compare* Mattis Mem., Dkt. 120-1 (setting forth DoD's new policy), *with* DoD Report and Recommendations 7, Dkt. 120-2 (describing the historical ban on military service by transgender individuals). The Department's new policy, like the Carter policy, allows transgender individuals without a history of the medical condition of gender dysphoria to serve, if they meet the standards associated with their biological sex. *See* Mattis Mem., Dkt. 120-1; DoD Report and Recommendations, Dkt. 120-2; *see also* Defs.' Mot. to Dissolve the Prelim. Inj. 6–8, Dkt. 120; Defs.' Mot. to Dismiss 6–8, Dkt. 158. Moreover, the new policy allows service members "who were diagnosed with gender dysphoria by a military medical provider after the effective date of the Carter policy, but before the effective date of any new policy," including those who entered the military "after January 1, 2018," to "continue to receive all medically necessary care, to change their gender marker in the Defense Enrollment Eligibility Reporting System (DEERS), and to serve in their preferred gender, even after the new policy commences." DoD Report and Recommendations 5–6, Dkt. 120-2; *see also* Defs.' Mot. to Dissolve the Prelim. Inj. 7, Dkt. 120; Defs.' Mot. to Dismiss 7, Dkt. 158. Because the new policy does not operate on the basis of transgender status and allows transgender individuals without a history of the medical condition of gender dysphoria to serve, if they meet the standards associated

16

with their biological sex, *see* Mattis Mem., Dkt. 120-1; DoD Report and Recommendations, Dkt. 120-2, the Magistrate Judge's findings to the contrary were clearly erroneous.

Plaintiffs also attempt to defend the Magistrate Judge's finding that "a previous panel under a previous Secretary of Defense did extensive studies *before a decision was rendered*," Mem. Op. 6, Dkt. 204; Pls.' Resp. 21. But both Plaintiffs and the Magistrate Judge overlook that former Secretary of Defense Ashton Carter directed a working group to "start with the *presumption* that transgender persons can serve openly without adverse impact on military effectiveness and readiness, unless and except where objective, practical impediments are identified." AR 319, Dkt. 133-4 (emphasis added). Moreover, as the RAND Corporation recently explained, it was "not ask[ed] . . . to recommend whether" the pre-Carter policy should be abandoned, but simply to answer seven specific questions. Agnes Gereben Schaefer, On RAND's Research Findings Regarding Transgender Military Personnel Policy, COMMENTARY (THE RAND BLOG) (Mar. 27, 2018), Dkt. 158-2. The prior Administration thus started with a conclusion and predetermined outcome, not a study, and then back-filled its analysis. Contrary to the Magistrate Judge's finding, the new DoD policy was preceded by study and analysis, and accompanied by a 44-page report and 3,000-page record, which must be the focus of any judicial review. *See Hawaii*, 138 S. Ct. at 2417–23.

Accordingly, because the Magistrate Judge's Memorandum Opinion and Order was predicated upon these clearly erroneous factual findings, the Memorandum Opinion and Order should be set aside for this reason as well.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' Objections, the Court should set aside the Magistrate Judge's Memorandum Opinion and Order, except for the prohibition on seeking discovery from the President pending the resolution of Defendants' motion to dismiss the President as a party to this case.

Date:  September 28, 2018

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Branch Director

ANTHONY J. COPPOLINO
Deputy Director

*/s/  Courtney D. Enlow*
COURTNEY D. ENLOW
ANDREW E. CARMICHAEL
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
Telephone: (202) 616-8467
Email: courtney.d.enlow@usdoj.gov

*Counsel for Defendants*