IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BROCK STONE, et al.,                    :

     Plaintiffs,                        :

v.                                       :          Civil Action No. GLR-17-2459

DONALD J. TRUMP, et al.,                 :

     Defendants.                       :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants President Donald J. Trump, Secretary of Defense James Mattis, Secretary of the Army Mark Esper, Secretary of the Navy Richard Spencer, Secretary of the Air Force Heather Wilson, Secretary of Homeland Security Kirstjen Nielsen, and Commandant of the U.S. Coast Guard Paul Zukunft's Objections to the Magistrate Judge's Memorandum Opinion and Order (ECF No. 209) and Motion to Stay Compliance with the Magistrate Judge's Memorandum Order and Opinion (ECF No. 208). This case involves equal protection and substantive due process challenges to President Trump's policy banning transgender persons from serving in the military. The Objections and Motion to Stay are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will overrule the Objections and grant the Motion to Stay.[1]

_____

[1] Also pending is Plaintiffs' Motion to Set a Date Certain for Compliance with Discovery Order (ECF No. 222). Because the Court will stay the effect of the August 14, 2018 Discovery Order pending the United States Court of Appeals for the Ninth Circuit's decision on a petition for writ of mandamus in a related case, In re Donald J. Trump, No.

# I.    BACKGROUND[2]

## A.    **Factual Background**

In 2016, the Department of Defense ("DOD"), after completing a thorough analysis of military costs, readiness, and other factors, concluded that "there was no basis for the military to exclude men and women who are transgender from openly serving their country, subject to the same fitness requirements as other service members." (2d Am. Compl. ¶ 5, ECF No. 148). Subsequently, the Secretary of Defense issued the Open Service Directive to permit transgender persons to serve openly starting July 1, 2017. (Id.).

On July 26, 2017, however, President Trump published a series of Tweets[3] stating, "[T]he United States Government will not accept or allow . . . [t]ransgender individuals to serve in any capacity in the U.S. Military." (Id. ¶ 6). On August 25, 2017, President Trump issued a "Memorandum for the Secretary of Defense and the Secretary of Homeland Security" ("Transgender Service Member Ban"), which formalized the ban on transgender service members. (Id. ¶ 8). In addition, President Trump directed the Secretary of Defense to develop a plan for implementing the policy directives by February 21, 2018 (the "Implementation Plan"), with full implementation by March 23, 2018. (Id.).

---

18-72159 (9th Cir. argued Oct. 10, 2018), the Court will deny the Motion to Set a Date Certain as moot.

[2] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Second Amended Complaint. The Court will address additional facts when discussing applicable law.

[3] A Tweet is a short message posted on the social media website Twitter.

On September 14, 2017, the Secretary of Defense issued Terms of Reference for developing the Implementation Plan, which directed the Deputy Secretary of Defense and the Vice Chairman of the Joint Chiefs of Staff to lead the development of the Implementation Plan and to convene a Panel of Experts from within DOD to conduct a study to inform the Implementation Plan. (Pls.' Cert. Conf. Counsel Ex. 20 at 2–3, ECF No. 177-24).[4] In March 2018, the Secretary of Defense publically released the Implementation Plan, which: (1) prohibited transgender individuals who "require or have undergone gender transition" from serving in the military; and (2) permitted all other transgender individuals to serve "in their biological sex" as long as they do not have a history or diagnosis of gender dysphoria. (2d Am. Compl. ¶ 11; Defs.' Mot. Dissolve Prelim. Inj. Ex. 1 at 2–3, ECF No. 120-1). These three policy directives: (1) the presidential Tweets; (2) the Transgender Service Member Ban; and (3) the Implementation Plan and related Panel of Experts, are at issue in this case.

On August 28, 2017, fourteen transgender individuals[5] and the American Civil Liberties Union of Maryland, Inc. filed suit against Defendants. (ECF No. 1). Plaintiffs allege that President Trump's ban on transgender persons serving in the military violates: (1) the Equal Protection component of the Due Process Clause to the Fifth Amendment of

---

[4] Citations to Exhibit 20 to Plaintiffs' Certificate of Conference of Counsel refer to the pagination the Court's Case Management and Electronic Court Filing system assigned.

[5] The individual Plaintiffs are Petty Officer First Class Brock Stone, Staff Sergeant Kate Cole, Staff Sergeant John Doe 1, Airman First Class Seven Ero George, Petty Officer First Class Teagan Gilbert, Technical Sergeant Tommie Parker, Teddy D'Atri, Ryan Wood, Niko Branco, John Doe 2, Jane Roe 1, John Doe 3, Jane Roe 2, and John Doe 4. (2d Am. Compl. ¶¶ 17–106). Plaintiffs include current military service members, as well as individuals seeking to enlist in the military. (See id.).

the United States Constitution; (2) substantive due process; and (3) 10 U.S.C. § 1074 (2018), which entitles current and certain former members of the military to medical care. (Am. Compl. at 32, 36, 38, ECF No. 39).[6]

## B. __Procedural Background__

On September 14, 2017, Plaintiffs filed a Motion for a Preliminary Injunction. (ECF No. 40). On October 12, 2017, Defendants filed a Motion to Dismiss and Opposition to Plaintiff's Motion for a Preliminary Injunction. (ECF No. 52). On November 21, 2017, this Court granted Plaintiffs' Motion for a Preliminary Injunction[7] and Defendant's Motion to Dismiss the 10 U.S.C. § 1074 claim. (Nov. 21, 2018 Mem. & Order at 52–53, ECF No. 85).[8]

On May 4, 2018, the Court referred this case to a United States Magistrate Judge ("USMJ") for all discovery. (ECF No. 152). On June 15, 2018, Plaintiffs filed a Motion to Compel Supplemental Interrogatory Answers and Production. (ECF No. 177-1). In

---

[6] Around the same time, three similar lawsuits challenging the constitutionality of the Transgender Service Member Ban were filed in other federal district courts. These cases are: Doe v. Trump, No. 17-cv-01597 (D.D.C. filed Aug. 9, 2017), Karnoski v. Trump, No. 17-cv-01297 (W.D.Wash. filed Aug. 28, 2017), and Stockman v. Trump, No. 17-cv-01799 (C.D.Cal. filed Sept. 5, 2017). These cases remain pending.

[7] The federal courts in Doe, Karnoski, and Stockman also "issued preliminary injunctions prohibiting the White House and the military from taking any action to enforce President Trump's ban." (2d Am. Compl. ¶ 10). "As a result of those injunctions, the Open Service policy remained in effect, and the military began accepting transgender recruits on January 1, 2018." (Id.).

[8] Defendants later appealed the Preliminary Injunction. (ECF No. 86). Defendants also filed a Motion for Judgment on the Pleadings and a Motion to Partially Dissolve the Preliminary Injunction (ECF No. 115), a Motion to Dissolve the Preliminary Injunction (ECF No. 120), a Motion for a Protective Order (ECF No. 121), and Motion to Dismiss Plaintiffs' Second Amended Complaint, or, in the Alternative, Defendants' Motion for Summary Judgment (ECF No. 158). Plaintiffs also filed a Cross-Motion for Summary Judgment (ECF No. 163). These Motions remain pending before the Court.

their Motion to Compel, Plaintiffs sought deliberative materials regarding: (1) President Trump's July 2017 Tweets and the Transgender Service Member Ban; (2) the DOD's Panel of Experts; and (3) the Implementation Plan and President Trump's acceptance of the Plan. (Pls.' Mot. Compel at 1, ECF No. 177-1). At the same time, Plaintiffs filed a Motion for a Judicial Determination of Privilege Claims (ECF No. 178 (sealed document)) on a PowerPoint presentation that the Army inadvertently produced and Defendants sought to clawback on the theory that it, too, is protected by deliberative process privilege. (Defs.' Objs. Magistrate Judge's Mem. Op. & Order at 5, ECF No. 209). On June 18, 2018, Defendants filed a Motion for a Protective Order to preclude discovery directed at the President and other sources concerning presidential communications and deliberations. (ECF No. 179).[9]

On August 14, 2018, the USMJ issued a Memorandum Opinion and Order on these three Motions. (Aug. 14, 2018 Mem. Op. ["Mem. Op."], ECF No. 204; Aug. 14, 2018 Order, ECF No. 205). The USMJ granted Plaintiffs' Motion to Compel, dismissed Plaintiffs' Motion for a Judicial Determination of Privilege Claims as moot, and granted Defendants' Motion for a Protective Order as to the President, but denied the Protective

---

[9] The other cases involving the Transgender Service Member Ban raise similar discovery issues. In <u>Doe</u>, plaintiffs filed a Motion to Compel Production of Documents and Information Withheld under the Deliberative Process Privilege. No. 17-cv-01597, ECF No. 169. That Motion remains pending before the U.S. District Court for the District of Columbia. In <u>Karnoski</u>, the U.S. District Court for the Western District of Washington granted the plaintiffs' Motion to Compel, ordering defendants to turn over documents that the defendants withheld solely under the deliberative process privilege. No. 17-cv-01297, ECF No. 299. The defendants then filed a Petition for a Writ of Mandamus and Emergency Motion for Stay Pending Consideration of the Petition. No. 17-cv-01297, ECF No. 302. That Petition remains pending before the United States Court of Appeals for the Ninth Circuit. <u>In re Donald J. Trump</u>, No. 18-72159.

Order as to others who communicate with the President. (Mem. Op. at 11; Aug. 14, 2018 Order ¶¶ 1–3). The USMJ granted Plaintiff's Motion to Compel because there were no justifiable reasons to stay discovery. (Mem. Op. at 4). In addition, applying <u>In re Subpoena Duces Tecum Served on Office of Comptroller of the Currency</u>, 145 F.3d 1422, 1424 (D.C. Cir. 1998), the USMJ concluded that deliberative process privilege does not apply given that government intent "is at the very heart of this litigation." (<u>Id.</u> at 5–6). The USMJ dismissed Plaintiffs' Motion for Judicial Determination of Privilege Claims as moot because the USMJ determined that deliberative process privilege does not apply to Plaintiffs' discovery requests. (<u>Id.</u> at 11). Finally, balancing deference to the Executive with Plaintiffs' need for discovery, the USMJ granted Defendants' Motion for a Protective Order as to the President but not as to individuals with whom the President communicates. (<u>Id.</u> at 9–11).

Defendants now object to the USMJ's Memorandum Opinion and Order, and move to stay the Order. (ECF Nos. 208, 209). Plaintiffs filed an Opposition to Defendants' Motion to Stay on August 31, 2018. (ECF No. 211). Plaintiffs also filed an Opposition to Defendants' Objections to the USMJ's Order on September 14, 2018. (ECF No. 216). On September 28, 2018, Defendants filed a Reply. (ECF No. 221).

## II. DISCUSSION

### A. <u>Objections to the Magistrate Judge's Order</u>

#### 1. <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 72(a), a district court "must consider timely objections" to a USMJ's order on nondispositive, pretrial matters and "modify or

set aside any part of the order that is clearly erroneous or is contrary to law." "The 'clearly erroneous' standard applies to factual findings, while legal conclusions will be rejected if they are 'contrary to law.'" <u>Sky Angel U.S., LLC v. Discovery Commc'ns, LLC</u>, 28 F.Supp.3d 465, 479 (D.Md. 2014).

Under the clearly erroneous standard, the reviewing court does not ask whether a finding is "the best or only conclusion permissible based on the evidence." <u>In re Subpoena of Am. Nurses Ass'n</u>, No. 08-CV-0378, 2013 WL 5741242, at *1 (D.Md. Aug. 8, 2013) (quoting <u>Huggins v. Prince George's Cty.</u>, 750 F.Supp.2d 549, 559 (D.Md. 2010)). "Rather, the Court is 'only required to determine whether the magistrate judge's findings are reasonable and supported by the evidence." <u>Id.</u> (quoting <u>Huggins</u>, 750 F.Supp.2d at 559). The Court will affirm findings of fact "unless [the Court's] review of the entire record leaves [it] with the definite and firm conviction that a mistake has been committed." <u>Harman v. Levin</u>, 772 F.2d 1150, 1153 (4th Cir. 1985) (citing <u>United States v. U.S. Gypsum Co.</u>, 333 U.S. 364, 395 (1948)).

"The 'contrary to law' standard ordinarily suggests a plenary review of legal determinations, but many courts have noted that decisions of a magistrate judge concerning discovery disputes . . . should be afforded 'great deference.'" <u>In re Outsidewall Tire Litig.</u>, 267 F.R.D. 466, 470 (E.D.Va. 2010); <u>see also</u> <u>Neighborhood Dev. Collaborative v. Murphy</u>, 233 F.R.D. 436, 438 (D.Md. 2005) (stating that "[a] district court owes substantial deference to a magistrate judge in considering a magistrate judge's ruling on a non-dispositive motion"); 12 Charles Allen Wright, Arthur R. Miller & Richard L. Marcus, <u>Federal Practice & Procedure</u> § 3069 (2d ed. 1997) (observing that

altering a magistrate judge's nondispostive orders is extremely difficult to justify). "In light of the broad discretion given to a magistrate judge in the resolution of nondispositive discovery disputes, the court should only overrule a magistrate judge's determination if this discretion is abused." Patrick v. PHH Mortg. Corp., 298 F.R.D. 333, 336 (N.D.W.Va. 2014) (quoting Shoop v. Hott, 2010 WL 5067567, *2 (N.D.W.Va. Dec. 6, 2010)). Under the "contrary to law" standard, "the critical inquiry is whether there is legal authority that supports the magistrate's conclusion." Guiden v. Leatt Corp., No. 5:10-CV-00175, 2013 WL 4500319, at *3 (W.D.Ky. Aug. 21, 2013) (citing Carmona v. Wright, 233 F.R.D. 270, 276 (N.D.N.Y. 2006)). "That reasonable minds may differ on the wisdom of a legal conclusion does not mean it is clearly erroneous or contrary to law." Id. Importantly, "it is not the function of objections to discovery rulings to allow wholesale relitigation of issues resolved by the magistrate judge." Buchanan v. Consol. Stores Corp., 206 F.R.D. 123, 124 (D.Md. 2002).

## 2. Analysis

Defendants challenge three aspects of the USMJ's discovery Order: (1) certain factual findings; (2) the grant of Plaintiffs' Motion to Compel and the finding of mootness as to Plaintiffs' Motion for Judicial Determination of Privilege Claims; and (3) the partial denial of the Protective Order.

### a. Factual Findings

Defendants argue that the USMJ's Memorandum Opinion and Order are based on "clearly erroneous" findings of fact. (Defs.' Objs. Magistrate Judge's Mem. Op. & Order at 24–28). Defendants contend that the USMJ erred in finding that: (1) DOD's Panel of

Experts would not have existed but for President Trump's August 2017 Tweets; (2) the circumstances regarding military readiness and deployability could not have changed so dramatically between 2016 and 2018 to warrant the creation of a new policy; and (3) the new policy bans transgender persons from military service.

Here, the USMJ's factual findings are reasonable. First, the USMJ's conclusion that the DOD Panel of Experts would not exist but for President Trump's Tweets on transgender military service is supported by evidence in the record. President Trump issued his series of Tweets on July 26, 2017. When the Secretary of Defense issued Terms of Reference for developing the Implementation Plan over a month later on September 14, 2017, he directed the Deputy Secretary of Defense and the Vice Chairman of the Joint Chiefs of Staff to convene a Panel of Experts from within DOD to conduct a study to inform the Implementation Plan. (Pls.' Cert. Conf. Counsel Ex. 20 at 2–3). The timeline of these events would, therefore, make it reasonable to conclude that the Panel of Experts was born of President Trump's Tweets.

Nevertheless, Defendants argue that DOD began a review of its transgender service member policy before President Trump's Tweets, and that this review was the true impetus for convening the Panel of Experts. Plaintiffs explain, however, that this review was designed to assess the military's readiness to implement the Open Service Directive, not whether to implement the Open Service Directive at all. Thus, it was reasonable for the USMJ to find that the Panel of Experts would not exist without President Trump's Tweets announcing a change to the policy on transgender military service.

Second, the USMJ's finding that the circumstances regarding military readiness and deployability could not have changed so dramatically between 2016 and 2018 to warrant the creation of a new policy is reasonable based on the limited evidence in the record. Defendants suggest that this finding is clearly erroneous because the review for the Open Service Directive was based on limited and heavily caveated data from an external source, whereas the Panel of Experts' review was based on DOD's own data and experience. Plaintiffs and the USMJ regard the first review as valid because that process incorporated both the military leadership and transgender representatives. In order to explain how conditions changed so dramatically between 2016 and 2018, Defendants would need to produce additional information about the Panel of Experts that they currently seek to protect under deliberative process privilege. Given the lack of evidence in the record suggesting substantial changes to military readiness and deployability, the USMJ's finding that any such changes are too minor to warrant a change in policy is reasonable.

Finally, the USMJ's finding that the Transgender Service Member Ban bans transgender persons from military service is reasonable. Defendants argue that the Implementation Plan would not result in a ban of transgender persons from the military because the new policy is not based on transgender status, but rather on the medical condition of gender dysphoria. The Court is not persuaded. The Implementation Plan states: (1) "transgender persons who require or have undergone gender transition are disqualified from military service"; and (2) "transgender persons without a history or diagnosis of gender dysphoria, who are otherwise qualified for service, may serve . . . in

their biological sex." (Mot. Dissolve Prelim. Inj. at 3–4). Prohibiting transgender persons who have undergone transition clearly discriminates on the basis of transgender identity. Moreover, requiring transgender persons who have not undergone transition to serve in their biological sex forces them to "suppress the very characteristic that defines them as transgender in the first place." Karnoski v. Trump, 328 F.Supp.3d 1156, 1160 n.1 (W.D.Wash. 2018). As the Karnoski court explained, "that the Ban turns on transgender identity—and not on any medical condition—could not be clearer." Id. at 1160.

The Court will, therefore, overrule Defendants' Objections related to the USMJ's factual findings.

### b.    Motion to Compel

Defendants raise three main objections to the USMJ's Memorandum Opinion and Order addressing Plaintiffs' Motion to Compel and Motion for Judicial Determination of Privilege Claims: (1) the USMJ prematurely decided discovery motions because dispositive motions are still pending; (2) the USMJ failed to apply precedent from the United States Supreme Court and the United States Court of Appeals for the Fourth Circuit in determining that Plaintiffs' requested discovery is not protected by deliberative process privilege; and (3) the Motion for Judicial Determination of Privilege Claims is not moot because deliberative process privilege should apply. The Court disagrees.

### i.    Discovery Decisions Not Premature

"District courts enjoy substantial discretion in the management of discovery and whether to grant motions to compel." E.E.O.C. v. Freeman, 288 F.R.D. 92, 98 (D.Md. 2012) (first citing Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d

922, 929 (4th Cir. 1995); then citing LaRouche v. Nat'l Broad. Co., Inc., 780 F.2d 1134, 1139 (4th Cir. 1986); and then citing Clark v. Unum Life Ins. Co. of Am., 799 F.Supp.2d 527, 531 (D.Md 2011)). In granting a motion to compel discovery, a court may consider its interest in judicial economy and in moving a case toward a conclusion. Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); Bost v. Wexford Health Sources, Inc., No. ELH-15-3278, 2017 WL 3084953, *1–6 (D.Md. June 19, 2017) (granting a motion to compel in part because "this Court has a vested interest in moving this case toward conclusion").  In denying a motion to compel discovery, a court may consider whether compelling discovery is necessary. Freeman, 288 F.R.D. at 98 (first citing Cabana v. Forcier, 200 F.R.D. 9, 17 (D.Mass. 2001); then citing Tillman v. Lincoln Warehouse Corp., No. 83 CIV. 5381 (CSH), 1987 WL 7933, at *3 (S.D.N.Y. Mar. 13, 1987); then citing In re Folding Carton Antitrust Litig., 83 F.R.D. 132, 134 (N.D.Ill. 1979); then citing Oliver v. Comm. for the Re-Election of the President, 66 F.R.D. 553, 555 (D.D.C. 1975); and then citing 8B Charles Alan Wright et al., Federal Practice and Procedure § 2286 (3d ed. 2012)).

"Federal district courts often stay discovery pending the outcome of dispositive motions that will terminate the case." Cleveland Const., Inc. v. Schenkel & Schultz Architects, P.A., No. 3:08-CV-407RJCDCK, 2009 WL 903564, *2 (W.D.N.C. Mar. 31, 2009) (collecting cases). Ultimately, however, trial courts "are given wide discretion to control [the] discovery process." Thigpen v. United States, 800 F.2d 393, 397 (4th Cir. 1986) (first citing Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); and then citing Prakash v. American University, 727 F.2d 1174, 1179–80 (D.C.Cir. 1984), overruled on other

grounds by <u>Sheridan v. United States</u>, 487 U.S. 392 (1988); <u>see also</u> <u>Tilley v. United States</u>, 270 F.Supp.2d 731, 734 (M.D.N.C. 2003), <u>aff'd</u>, 85 F.App'x 333 (4th Cir. 2004); <u>Simpson v. Specialty Retail Concepts, Inc.</u>, 121 F.R.D. 261, 263 (M.D.N.C. 1988); <u>Chavous v. District of Columbia</u>, 201 F.R.D. 1, 3 (D.D.C. 2001)). In this Court, "the existence of a discovery dispute as to one matter does not justify delay in taking any other discovery." Local Rule 104.3 (D.Md. 2016).

Here, the USMJ did not rule contrary to law in granting Plaintiffs' Motion to Compel. It is within the Court's discretion to determine whether to stay discovery pending the resolution of dispositive motions. <u>Thigpen</u>, 800 F.2d at 396–97. The USMJ acted well within the bounds of his broad discretion when deciding to grant the Motion to Compel, particularly given the interest of this Court in moving the case toward a conclusion where "the parties appear to be very litigious." (Mem. Op. at 4); <u>see</u> Local Rule 104.3 (directing the court to move forward with discovery despite pending discovery disputes).

The Court will, therefore, overrule Defendants' Objections related to the USMJ prematurely deciding discovery motions.

### ii.    Deliberative Process Privilege

Defendants raise two arguments related to the USMJ's decision that deliberative process privilege does not apply to the documents Plaintiffs request. First, Defendants argue that the USMJ erred in failing to apply the factors from <u>Cipollone v. Liggett Grp. Inc.</u>, 812 F.2d 1400 (4th Cir. 1987) (unpublished table decision) (per curiam), to determine the applicability of deliberative process privilege. Second, Defendants contend

that government intent is not at issue in this case because the government is afforded great deference in military policy under Trump v. Hawaii, 138 S.Ct. 2392 (2018). If government intent is not at issue, Defendants assert, deliberative process privilege should apply to the documents Plaintiffs request.

A court should deny a motion to compel discovery where the requested discovery is protected by deliberative process privilege. See City of Va. Beach v. U.S. Dept. of Commerce, 995 F.2d 1247, 1253 (4th Cir. 1993) (stating that deliberative process privilege protects certain documents from disclosure). Deliberative process privilege is designed to enhance the quality of agency decisions by promoting candid communication among policymakers without the fear that their remarks will be subject to discovery. EPA v. Mink, 410 U.S. 73, 86–87 (1973). Accordingly, deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)). Deliberative process privilege does not protect purely factual information, unless it is inextricably intertwined with deliberative material. City of Va. Beach, 995 F.2d at 1253.

Deliberative process privilege is not absolute and courts may balance the "public interest in nondisclosure with the need for the information as evidence." Cipollone, 812 F.2d 1400. In striking this balance, courts have considered "(1) the relevance of the evidence to the lawsuit; (2) the availability of alternative evidence on the same matters; (3) the government's role (if any) in the litigation, and (4) the extent to which disclosure

would hinder frank and independent discussion regarding contemplated policies and decisions." Id. (citing FTC v. Warner Commcn's, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984)).

In weighing the government's role, some courts have held that the deliberative process privilege does not apply where "the plaintiff's cause of action is directed at the government's intent." In re Subpoena Duces Tecum, 145 F.3d at 1424; see also Children First Found., Inc. v. Martinez, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007) ("[I]f the party's cause of action is directed at the government's intent in rendering its policy decision and closely tied to the underlying litigation then the deliberative process privilege 'evaporates.'"); Jones v. City of Coll. Park, 237 F.R.D. 517, 521 (N.D.Ga. 2006) ("[T]he privilege is simply inapplicable, because government intent is at the heart of the issue in this case."); United States v. Lake Cty. Bd. of Comm'rs, 233 F.R.D. 523, 527 (N.D.Ind. 2005) ("[T]he deliberative process privilege does not apply when the government's intent is at issue.").

Here, the USMJ did not act contrary to law in finding that deliberative process privilege does not protect the information Plaintiffs requested in their Motion to Compel. The standard of review for objections to a USMJ's ruling looks to whether there is legal authority that supports the USMJ's conclusion. Guiden, 2013 WL 4500319, at *3 (citing Carmona, 233 F.R.D. at 276). While there is no binding legal authority on the application of deliberative process privilege in the Fourth Circuit, both In re Subpoena Duces Tecum and Cipollone provide legal authority to support the USMJ's conclusion. The USMJ applied In re Subpoena Duces Tecum and concluded that deliberative process privilege

15

does not apply to the documents Plaintiffs requested because the government's intent is at the heart of the issue in this case.

Even if the USMJ had applied the <u>Cipollone</u> balancing test, he would have reached the same conclusion. First, the deliberative evidence Plaintiffs seek on government intent is highly relevant to the lawsuit because it may explain why the Government changed its policy on transgender service members and whether that policy change was motivated by a legitimate government interest. Second, no alternative evidence on government intent is available to Plaintiffs. Third, the Government plays a central role in the litigation because Defendants—the parties being sued—are government officials and the parties that created the challenged Transgender Service Member Ban. These three factors weigh strongly in favor of disclosure and outweigh the fourth factor—the risk that disclosure will chill future policymaking discussions.[10]

Nevertheless, Defendants argue that the <u>Cipollone</u> balancing test would not weigh in favor of disclosure because government intent is not at issue. Defendants maintain that government intent is not at issue because <u>Trump v. Hawaii</u>, affords great deference to the government on issues of military policy. Plaintiffs aptly point out, however, that the deference afforded to military policy in <u>Hawaii</u> applies to a facially neutral policy. Unlike the policy in <u>Hawaii</u>, which was "facially neutral towards religion," the "[Transgender Service Member] Ban is facially discriminatory." <u>Karnoski</u>, 328 F.Supp.3d at 1160; (<u>see</u>

---

[10] Defendants argue that disclosure of deliberative documents will chill candid discussions about military policy between subordinates and military leaders. Defendants do not explain, , however,  why the chilling effect is particularly great in this case or why it is great enough to outweigh the other three <u>Cipollone</u> factors.

<u>also</u> Nov. 21, 2017 Mem. & Order at 43–44 (holding that transgender persons are at least a quasi-suspect class, intermediate scrutiny is appropriate, and "the lack of any justification for the abrupt policy change, combined with the discriminatory impact to a group of our military service members who have served our country capably and honorably, cannot possibly constitute a legitimate governmental interest")). As a result, the deference afforded to the government's military policy in <u>Hawaii</u> does not apply in this case.

The Court will, therefore, overrule Defendants' Objections related to the deliberative process privilege.

### iii.     Judicial Determination of Privilege Moot

Defendants argue that deliberative process privilege applies in this case and that it protects a PowerPoint document Defendants inadvertently disclosed to Plaintiffs. As a result, Defendants conclude that a judicial determination of privilege on the PowerPoint document that they seek to clawback is not moot.[11]

Here, the USMJ correctly concluded that Plaintiffs' Motion for a Judicial Determination of Privilege Claims on the PowerPoint that Defendants seek to clawback is moot. As discussed above, the USMJ correctly determined that deliberative process privilege does not apply to Plaintiffs' requested discovery, which rendered Defendants

---

[11] The USMJ describes Plaintiffs' Motion for Judicial Determination of Privilege Claims as relating to two documents. (Mem. Op. at 11). The parties, however, describe the same Motion as relating to one PowerPoint briefing. (Defs.' Objs. Magistrate Judge's Mem. Op. & Order at 23).

attempt to clawback the PowerPoint moot because it is not covered by deliberative process privilege.

The Court will, therefore, overrule Defendants' Objections related to the mootness of judicial determination of privilege of the PowerPoint.

### c. Protective Order and Presidential Communications Privilege

Defendants argue that the Protective Order should be extended not only to the President, but also to those with whom the President communicates because the same separation-of-powers concerns are at issue. Plaintiffs note that they are not seeking any information covered by presidential communications privilege at this time, but rather they are only seeking deliberative material. Plaintiffs plan to "exhaust this category of discovery before determining whether it is necessary to challenge Defendants' assertion of the presidential communications privilege." (Pls.' Resp. Defs.' Objs. Magistrate Judge's Mem. Op. & Order at 7, ECF No. 216).

Under Federal Rule of Civil Procedure 26(c)(1), "[a] party or any person from whom discovery is sought may move for a protective order." The government may seek a protective order in the interest of protecting presidential communications. Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 381 (2004) (discussing the Vice President's motion for a protective order as to discovery sought from him). "A President's communications and activities encompass a vastly wider range of sensitive material than would be true of any 'ordinary individual.'" United States v. Nixon, 418 U.S., 683, 715 (1974). Although the President "has a powerful interest in confidentiality of communications between

18

himself and his advisers, that interest must yield to a demonstrated specific need for evidence." Herbert v. Lando, 441 U.S. 153, 175 (1979).

Here, the USMJ did not err in granting the Protective Order only as to the President. Defendants argue that the USMJ's partial denial of Defendants' Motion for a Protective Order means that Plaintiffs may move to compel the disclosure of presidential communications "in the possession of Defendants other than the President." (Defs.' Reply Objs. Magistrate Judge's Mem. Op. & Order at 14, ECF No. 221). That is not how the Court understands the scope of the Protective Order. On the contrary, the Court construes the Protective Order to encompass communications both to and from the President. Consequently, any concerns Defendants have over a potential motion to compel disclosure of presidential communications is mitigated.

The Court will, therefore, overrule Defendants' Objections related to the Protective Order.

## B.    Motion to Stay Compliance with Magistrate Judge's Order

Defendants move to stay compliance with the USMJ's Memorandum Opinion and Order. They note that the Ninth Circuit granted the Karnoski defendants' motion for a stay pending consideration of the petition for writ of mandamus in In re Donald Trump. The stay in the Ninth Circuit precludes disclosure of documents protected by deliberative process privilege. See Karnoski, 328 F.Supp.3d at 1163 (compelling disclosure of "documents that have been withheld solely under the deliberative process privilege"); Sept. 17, 2018 Order, In re Donald J. Trump, No. 18-72159 (9th Cir. argued Oct. 10, 2018), ECF No. 36 (granting stay of the Karnoski court's order compelling discovery of,

among other things, documents withheld under the deliberative process privilege).[12] Defendants argue that many of those same documents will be disclosed in this case if the Court enforces the USMJ's Order.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Donnelly v. Branch Banking & Trust Co., 971 F.Supp.2d 495, 501 (D.Md. 2013) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). The Court considers the following factors when determining whether to grant a stay: "the length of the requested stay, the hardship that the movant would face if the motion were denied, the burden a stay would impose on the nonmovant, and whether the stay would promote judicial economy by avoiding duplicative litigation." Id. at 501–02 (quoting In re Mut. Funds Inv. Litig., No. MDL 1586, 2011 WL 3819608, at *1 (D.Md. Aug. 25, 2011)).

"A district court ordinarily has discretion to delay proceedings when a higher court will issue a decision that may affect the outcome of the pending case." White v. Ally Fin. Inc., 969 F.Supp.2d 451, 461–62 (S.D.W.Va. 2013) (first citing Kelley v. Metro. Cty. Bd. of Educ., 436 F.2d 856, 863 (6th Cir. 1970) (Celebrezze, J., concurring in part and dissenting in part); and then citing Hickey v. Baxter, 833 F.2d 1005 (4th Cir. 1987)

---

[12] The Court acknowledges that the appeal of the motion to compel discovery in In re Donald J. Trump applies to documents that the Karnoski defendants maintain the presidential communications privilege covers, as well as documents they assert the deliberative process privilege covers. Nevertheless, one of the issues on appeal is the applicability of deliberative process privilege to documents that are similar to documents Plaintiffs seek in the instant case.

(unpublished table decision)); see also Int'l Refugee Assistance Project v. Trump, 323 F.Supp.3d 726, 732 (D.Md. 2018) (granting a stay where "resolution of the issues before the Supreme Court will likely have a direct impact on the future course of the case").

Here, all four factors weigh in favor of staying the USMJ's Order compelling production of documents Defendants maintain are covered by the deliberative process privilege. A stay would promote judicial economy because the Karnoski defendants have appealed a similar motion to compel discovery of documents claiming deliberative process privilege. The Ninth Circuit stayed the district court's order compelling discovery of these documents until it issues a decision on the writ. There is significant overlap between the documents the Karnoski plaintiffs seek and the deliberative documents Plaintiffs seek in this case. Compare Karnoski, 328 F.Supp.3d at 1159 (requesting, among other things, discovery regarding "[t]he process by which President Trump formulated the Ban, including identification of 'all sources of fact or opinion' he 'consulted, considered, or otherwise referred to' in formulating the Ban), with (Pls.' Mot. Compel ¶ 1) (requesting, among other things, "deliberative materials relating to the President's original July 2017 Tweets and August 2017 Memorandum banning transgender individuals from military service). As a result, staying the order compelling production of these documents purportedly covered by the deliberative process privilege until the resolution of the appeal in Karnoski could avoid duplicative litigation. Moreover, the length of the stay should be brief, given that the Ninth Circuit heard oral argument on the issue on October 10, 2018. Denying the stay would impose a burden on Defendants by requiring them to disclose deliberative documents that are currently being

withheld under a stay in the Ninth Circuit. While granting a stay may burden Plaintiffs by delaying the litigation, the Court has a strong interest in consistency with the parallel proceeding in the Ninth Circuit. Accord White, 969 F.Supp.2d at 461–62.

Thus, the Court, will grant Defendants' Motion to Stay the Magistrate's Order as to the Motion to Compel until the Ninth Circuit issues its opinion in In re Donald J. Trump.

## III.    CONCLUSION

For the foregoing reasons, the Court will overrule Defendants' Objections to the USMJ's Memorandum Opinion and Order (ECF No. 209) and grant Defendants' Motion to Stay the USMJ's Memorandum Opinion and Order (ECF No. 208), pending the decision on the petition for writ of mandamus in the Ninth Circuit. A separate order follows.

Entered this 30th day of November, 2018

_____/s/_____
George L. Russell, III
United States District Judge