IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BROCK STONE, et al.,      *

    Plaintiffs,      *

v.      *      CIVIL NO.: GLR-17-2459

DONALD J. TRUMP, et al.,      *

    Defendants.      *

******

## MEMORANDUM OPINION

On September 3, 2019, this matter was remanded to me "to apply the *Cipollone* factors to the categories of documents Plaintiffs seek in their motion to compel and permit Defendants to argue that Plaintiffs should more narrowly define the categories of documents" (ECF 267 at p. 10). On September 18, 2019, the Court ordered supplemental briefing with respect to the issues upon remand. The parties have filed their supplemental briefs (ECF 276, 281, and 285). The parties also filed a joint status report at the request of the Court (ECF 298). There has been some additional disclosure by Defendants (ECF 294) and the joint status report more accurately pinpoints the issues that remain in dispute. I have reviewed the pleadings along with the authorities cited by the parties. No hearing is necessary. Local Rule 105.6.

**Background**

The Court views the resolution of the remanded issues as a two-step process. First, are the three categories of documents Plaintiffs move to compel sufficiently defined to permit the Court to apply the *Cipollone* factors. *Cipollone v. Liggett Group, Inc.,* 812 F.2d 1400 (4th Cir. 1987). Defendants argue that Plaintiffs' document requests are overly broad, overly burdensome and therefore no meaningful application of the *Cipollone* factors will occur. Plaintiffs argue that the three categories of documents requested were derived from the privilege logs supplied to

Plaintiffs by Defendants and Plaintiffs have made every effort to define the categories of documents based upon the privilege log disclosures. Plaintiffs also point out in their Reply that Defendants in their Response have added information that provides additional descriptions not previously contained in the privilege logs, making the logs a work in progress.

The parties describe the three categories that remain in dispute:

"As stated in Plaintiffs' Motion, the three categories of documents Plaintiffs seek are as follows:

(1) deliberative materials relating to the President's original July 2017 Tweets and August 2017 Memorandum banning transgender individuals from military service ["Category 1"];
(2) deliberative materials relating to the activities of the Department of Defense's so-called "panel of experts" and its working groups tasked with developing a plan to study and implement that decision ["Category 2"]; and
(3) deliberative materials relating to the Department of Defense's Implementation Plan and the President's acceptance of that Plan in his March 23 memorandum including any participation or interference in that process by anti-transgender activists and lobbyist[s] ["Category 3"].

ECF 298. Defendants also represent that they have produced documents to Plaintiffs in response to the order in the related case of *Doe 2 v. Esper,* No. 17-cv-1597 – CKK (D.D.C.). *Id.* The parties agree that the additional disclosure was related solely to Category 2 documents and that Plaintiffs allege that the additional disclosure still does not satisfy the Defendants' burden of production as to even the Category 2 documents. The disputes over the supplemental disclosures are captured in ECF 294 and ECF 296 as well.

### **Discussion**

At the start, the Court gives no weight to Defendants' argument that the three categories of documents are overly broad. Defendants have argued here as in *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019) that a more "granular" approach is necessary before applying the *Cipollone* factors. After reviewing all the pleadings and exhibits, it is clear to the Court that Defendants already have knowledge of the documents that comprise each of the three categories. *See,* ECF

2

296-2 (Transcript of Proceedings, February 3, 2020). Government counsel described in detail the types of documents contained in each category and relied upon the privilege log that according to government counsel, contains detailed description of those documents. Unfortunately for government counsel, Plaintiffs here as well as in the Western District of Washington, have convinced the Court that the Defendants' privilege log is woefully lacking and somewhat "fluid" in its continually adaptive descriptions. ECF 285 at p. 10, 296-2 at pp. 19- 20.

The Court is also not persuaded by Defendants' argument that the production of the requested documents and information is unduly burdensome. At the hearing in *Karnoski* before Judge Pechman on February 3, 2020, government counsel stated "We have privilege logs which list every single document we've withheld and the basis for withholding those documents. Then we have the 218 requests for productions we've received *across all four cases* (emphasis added). Now, when we conducted our search in this case, we did not say, all right, conduct 218 separate searches, one for each Request for Production, and then we have a different bucket of documents for each Request for Production. So, we did an extraordinarily broad search. We picked 156 custodians. And basically anything those custodians had that related to transgender went into our collection. And documents that were responsive and that we withheld as privilege, we noted those on a privilege log." ECF 296-2 at pp. 58-59. It is hard to support a defense of burdensome when government counsel in the related case admits the documents are not only available, but also culled as to the government's position on privilege. Therefore, I find that the Plaintiffs' categories are appropriately discreet, Defendants have already identified the documents as categorized and the Court will apply the *Cipollone* factors to the categories as requested.

**The Application of *Cipollone***

Before reaching an analysis of this case in light of the factors set forth in *Cipollone*, it is important to first review the principles espoused by the Court.

3

"The courts have frequently cited three interrelated reasons why some deliberative agency communications should be shielded from disclosure. First, "[the deliberative process privilege] serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism." *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980). Second, the privilege "protect[s] against premature disclosure of proposed policies before they have been finally formulated or adopted." *Id.* Third, the privilege "protect[s] against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Id.*

All three of these purposes look not to protection of the documents but, rather, of the deliberative process itself. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151 (1975). It follows that each assertion of the privilege must be checked against the details of the deliberative process and the role of the documents to that process. *See Renegotiation Board v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168 (1975). In part because the strength of the government's interest varies with each "deliberative process," and because the privilege is only qualified, the case law has developed incrementally and, perhaps, inconsistently. As the Supreme Court noted in an early case construing the Freedom of Information Act, drawing lines "between what may be withheld and what must be disclosed is not without difficulties" since "the rules governing discovery in such litigation have remained uncertain from the very beginnings of the Republic." *EPA v. Mink,* 410 U.S. 73, 86 (1973). As Judge Friendly noted, this is a "masterpiece of understatement." *Lead Industries Association v. OSHA,* 610 F.2d 70, 82 (2d Cir.1979). *Cipollone* at 2.

The takeaway from the language here is that it is the deliberative process itself that is being protected, not the documents which are a byproduct of that process. Further, the privilege covers opinions, it does not cover facts. *Id.* In application, it is not how the opinion was formed that is protected (the facts). It is the generated opinion itself. The facts relied upon as well as the facts regarding the process are not protected by the privilege. *Id.* So by way of example, the factual information provided to the decisionmakers along with how those facts came to exist and how they were applied (absent the opinion itself) remain outside the scope of the privilege. Did the President tweet his ban without factual support? Were there truly no Generals or experts consulted? Did the President give his own "marching orders" or in this case, non-marching orders to deny transgender service? What was relied upon and what was the true impetus of the

ultimate ban? These are critical areas that are of great value in determining the outcome of these constitutional challenges.

When a party to a separate lawsuit seeks agency materials, the validity of the privilege "depends ... upon a balancing of the public interest in nondisclosure with the need for the information as evidence." *Id., citing, Dowd v. Calabrese,* 101 F.R.D. 427, 431 (D.D.C.1984). In *Cipollone*, the Fourth Circuit adopted the balancing test of *FTC v. Warner*, as follows:

> In striking this balance, the common law of discovery developed a number of factors for the court to consider, including: (1) the relevance of the evidence to the lawsuit; (2) the availability of alternative evidence on the same matters; (3) the government's role (if any) in the litigation, and (4) "the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *FTC v. Warner Communications, Inc.,* 742 F.2d 1156, 1161 (9th Cir.1984). While the last factor obviously requires a consideration of the policies underlying the privilege, it does so expressly in the context of *weighing* the public interest in nondisclosure of the particular materials at issue. *Id.* at 2.

On remand, I will apply the four factors to each category of documents and elaborate where possible. While Defendants allege they have satisfied category 2 disclosure, Plaintiffs contend that there are still category 2 documents being held by Defendants, so I will include them in this analysis. Also of note, in *Karnoski*, the District Court stated that Defendants always have the remedy of a protective order if there is a particular document at issue that Defendants have a good faith basis to seek protection. This Court fully rejects the notion that Plaintiffs must seek the disclosure of documents individually and in accordance with the privilege log provided by Defendants. Even the accuracy and dependability of the privilege log remains in dispute due to its fluid nature. That suggested approach to this Court as it was to the *Karnoski* court appears to simply be a delay tactic to keep the discovery process at bay.

As a preliminary matter, the Court adopts the facts set forth in its Memorandum Opinion of August 14, 2018. The Court also adopts the reasoning set forth in its decision. The remaining matter here is to apply these four factors to the three categories of documents. This Opinion

serves to supplement the August 14, 2018 Memorandum Opinion and comply with the District Court's directive to apply the *Cipollone* factors to the discovery at issue. The Court refers to these documents collectively as category 1, 2 and 3. There is some detail available in the pleadings that more specifically define the actual documents. In this Opinion I have taken those specific descriptions into consideration but refer to them more simply by category.

**(1) The Relevance of the Evidence to the Lawsuit**

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). To be relevant, the information must relate to a claim or defense and be proportional to the needs of the case.

The party resisting discovery bears the burden of persuasion and not the party seeking discovery. *Santiago v. Southern Health Partners*, 2016 WL 4435229 (M.D.N.C. 2016) (unreported decision). Restoring the proportionality calculation to Rule 26(b)(1) did not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportional considerations."); see also id. ("Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional." Fed. R. Civ. P. 26(b)(1) (Advisory committee note, 2015 Amendment). In the present case, Defendants have not argued with any support that the requested discovery is not proportional to the needs of the case. Defendants in companion cases have stated that they have the requested discovery within their control. After considering all the factors set forth in Rule 26(b)(1), the Court finds

that as to all three categories, that Defendants have not met their burden of persuasion that the requested discovery is not proportional to the needs of the case.

**Category 1 Documents**

In category 1, Plaintiffs seek deliberations regarding the original July, 2017 tweets and the August 2017 Memorandum. In essence, Plaintiffs allege the President of the United States acted *sua sponte* and unconstitutionally in announcing on Twitter a ban on transgender military service. Plaintiffs allege this was done *absent* the deliberative process, causing a flurry of activity on the part of Secretary Mattis and the Department of Defense, to justify the President's ban with follow up deliberations. First, and in accordance with *Cipollone* and the authorities cited therein, the facts surrounding these events are not privileged and must be disclosed. The who, what, when, where and how this Twitter announcement occurred along with the facts regarding Secretary Mattis and the Department of Defense's actions and reactions to the Twitter are not protected by the deliberative process. The relevance of the category 1 information is unquestionable. It goes not only to the crux of Plaintiffs' claims but also to the heart of the Defense, as the Court understands it, that there were ongoing deliberations regarding transgender military service and the impending Carter policy prior to the Twitter flurry of July 2017. That defense includes evidence of Secretary Mattis' sudden postponement of the Carter Policy going into effect on July 1, 2017, prior to the tweets.

With respect to any documents that were in fact deliberative in nature and otherwise privileged, those documents are just as relevant. They would tend to prove a claim or a defense at the heart of this litigation. The documents requested in category 1 are relevant and therefore meet the first requirement under *Cipollone*.

**Category 2 Documents**

The category 2 documents consist of deliberative materials relating to the activities of the Department of Defense's panel of experts and its working groups tasked with developing a plan to study and implement the decision to ban transgender service. The relevance of these documents is blatantly obvious and the evidence would tend to prove Plaintiffs' claims or support the Defendants' rationale for the ban.

The Defendants have stated to the Court that they have "[p]roduced to Plaintiffs here all documents reviewed by the Panel of Experts and all communications to or from members of the Panel of Experts from September 14, 2017 to March 18, 2018, that were previously withheld pursuant to the deliberative process privilege." ECF 298 at pp. 2-3. Defendants have continued to withhold documents in Plaintiff's category 2 (the working group documents) relying on the fact that the Ninth Circuit granted a temporary stay pending review of Defendants' mandamus petition. Defendants have never challenged the relevance of these category 2 documents. Therefore, as to category 2 documents, they are deemed relevant and meet the first requirement under *Cipollone*.

**Category 3 Documents**

The documents requested in category 3 are described as "deliberative materials relating to the Department of Defense's Implementation Plan and the President's acceptance of that Plan in his March 23 Memorandum including any participation or interference with that process by anti-gender activists and lobbyists". ECF 298. It appears to the Court that the Plaintiffs here are looking for any evidence that outside special interest groups may have unduly influenced the decision-making process resulting in the transgender ban. In order to determine whether such evidence exists, Plaintiffs are looking for what was ultimately relied upon by the President in acceptance of the Plan. Again, what Plaintiffs seek is critical to proving their claims and if no

such influence was inserted into the deliberative process, critical to the defense of these claims. The information sought is relevant and therefore Plaintiffs have met their burden as to the first requirement of *Cipollone* with respect to the category 3 documents.

**(2) The Availability of Alternative Evidence**

As to all three categories, no one has suggested to the Court that there are alternate means to gather the information requested. Plaintiffs cannot properly depose any witnesses until they have reviewed the document disclosure. There are no sources of alternate evidence in this case since the government controls all of the documents and the witnesses related to those documents. As to all three categories, the second requirement of *Cipollone* has been met.

**(3) The Government's Role in the Litigation**

With respect to all three categories of documents requested, the government controls the information, has already acquired all of the information and is a party to the litigation. Therefore the government plays a necessary and important role in the litigation and the third requirement of the *Cipollone* test has been met.

**(4) The Chilling Effect of Disclosure**

The fourth factor requires the Court apply a balancing test, "while the last factor obviously requires a consideration of the policies underlying the privilege, it does so expressly in the context of *weighing* the public interest in nondisclosure of the particular materials at issue". *Cipollone* at 2 (emphasis in the original). Defendants argue that disclosure of any of the documents would have a chilling effect on the deliberative process. "In any event disclosure of all the deliberative documents would have a chilling effect across all levels of officials at the Department of Defense in future deliberations". ECF 281 at p. 34. This approach of sheltering all documents because the exposure of any one will result in the catastrophic disruption of the deliberative process, is far-fetched. The position of Defendants here is belied by their disclosure

already of many documents. As equally far-fetched is the notion that Plaintiffs are entitled to the universe of documents regardless of the level of its origin and the why the privilege applies. The privilege exists for a purpose – to protect the opinions expressed in the process of deliberations and to encourage full and frank discussion of issues by government officials. The privilege is overcome when the public interest favors disclosure. Neither party is entitled to an all or none result here.

The litigation here is very fact driven. The President of the United States with no obvious backdrop of the deliberative process, takes to social media to announce a change in policy that drastically effected transgender service members and transgender persons who intend to serve their country. As stated before, the "facts" of who, what, when, where and how this came about are not protected under the privilege. The government must disclose the information requested in discovery.

**Category 1 Documents**

Whether there were deliberations preceding the July Twitter of POTUS is a fact issue and the public interest weighs in favor of disclosing any materials identified as deliberative process regarding the documents and information preceding the July 2017 Tweets. The information regarding pre-tweet deliberations is critical to both sides of this litigation. To prohibit disclosure would not be in the interest of the public and there is no particularized showing that a significant chilling effect would occur in future deliberations. The balancing test as applied to the category 1 documents weighs in favor of disclosure.

**Category 2 Documents**

With respect to category 2 documents, the same analysis applies. Documents generated to and from the panel of experts and its working groups are inextricably intertwined with the decision-making process or lack of process as Plaintiffs allege. The same dictates apply – facts

are not protected under the privilege, only opinions. It is one thing for Defendants to allege a chilling effect on future deliberations, it is another to explain to the Court what the chilling effect is and how it will hinder full and frank discussions by government officials. It is also evident from Defendants' notice of production (ECF 294) that many of the documents have been disclosed in accordance with the court's decision in *Jane Doe 2*. ECF 294. The prior disclosure and the lack of specificity in Defendants' objections weigh in favor of full disclosure of the category 2 documents. Nondisclosure of category 2 documents does not serve the public interest.

**Category 3 Documents**

The category 3 documents relate to the Department of Defense's implementation plan and the formation of the March 23, 2018 Memorandum executed by the President. What really seems to be at issue as stated previously is whether any special interest groups participated in or interfered with the deliberative process in its final formation. The evidence relied upon in the execution of the Memorandum is critical to both sides. The fact that a prior administration had adopted the Carter plan, which by all accounts properly followed the deliberative process and did not announce a change in military policy via Twitter, and now that plan was abandoned on the eve of its inception, begs the question of why. That "why" may not only be found in the category 1 and 2 documents but in the final formation, category 3 documents as well. This Court is not judging the validity of any government decision, only the availability of discovery in this specific litigation. The category 3 documents are just as critical and if there were outside influences that were taken into consideration, the Plaintiffs are entitled to that information.

Of course and of necessity, there are caveats to the ordered disclosures. If Defendants have specific and well-defined objections based upon the *level* at which the documents were issued, or any other *good faith reasons* as to specific documents, Defendants have the available relief of protective orders. I would caution Defendants that the Court will be closely examining

any requests for protective orders in light of the discussions between government counsel and the court in *Karnoski* regarding persistent delay tactics by the government. I also took note in the transcript the government counsel asked for clarification of each and every order by the *Karnoski* court. Any disclosure can be made pursuant to the confidentiality agreement between the parties. There is also the remedy of requesting a sealing order from the Court and if necessary pretrial motions *in limine* where applicable.

As predicted by Judge Russell of this Court, I have applied the four factor test set forth in *Cipollone* and the results here, after weighing the factors compel disclosure of categories 1,2 and 3 of documents consistent with this Opinion. The Motion to Compel is GRANTED.

A separate Order will follow.

9 April 2020
Date

A. David Copperthite
United States Magistrate Judge